# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ALEXANDER KWABENA BURTON,

Defendant-Appellant.

UNPUBLISHED
January 9, 2018

No. 333759
Oakland Circuit Court
LC No. 2015-256745-FH

Before: STEPHENS, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of unlawful imprisonment, MCL 750.349b, felonious assault, MCL 750.82, domestic violence third offense, MCL 750.81(4), and assault by strangulation, MCL 750.84(1)(b). We affirm.

This case arises from defendant's imprisonment and beating of the victim. The victim testified that defendant invited her to move back into his home in Hazel Park and on the day she moved her belongings in, he tied her up in the basement and beat her. After defendant left the house, the victim escaped to a nearby gas station, where the police were called.

## I. LATE-DISCLOSED EVIDENCE

At trial, an issue came up where police reports were discovered and given to defense counsel after the victim had testified. Additionally, a recorded phone conversation between the victim and the officer in charge, Detective Janeen Gielniak, was provided to defense counsel after the victim testified. Because these items were discovered after the victim had testified on the second day of trial, the victim was recalled to the stand on the fourth day of trial for clarification or impeachment purposes.

Defendant argues that he was denied due process because of the late disclosure of the police reports and the recorded phone call. We disagree. We review this unpreserved constitutional issue for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 764-765; 597 NW2d 130 (1999). Thus, in order to prevail, defendant must prove that "(1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected a substantial right of the defendant." *People v Pipes*, 475 Mich 267, 279; 715 NW2d 290 (2006).

-1-

"A defendant has a due process right of access to certain information possessed by the prosecution." *People v Fox (After Remand)*, 232 Mich App 541, 548-549; 591 NW2d 384 (1998), citing *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). In order to establish such a due process violation, a defendant must prove the following three elements: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is material." *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014). "Evidence is favorable to the defense when it is either exculpatory or impeaching. To establish materiality, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 150 (quotation marks and citations omitted).

Assuming the evidence is considered as being suppressed, although it was given to defendant and used at trial, defendant cannot show how he was prejudiced. In other words, defendant has failed to show how, had the information been disclosed before trial started, the outcome of the trial would have been any different. The trial court allowed the parties to recall the victim as a witness after the police reports and recorded phone call were disclosed to the defense, which allowed defendant to impeach the victim's credibility with this information. Thus, the record does not indicate that defendant was in any way hampered in his ability to impeach the victim's credibility. Defendant's unsupported claim that the impeachment would have "carried more weight" had he been able to do so earlier in trial is unpersuasive. There is nothing to suggest that the effect of any impeachment would have been any different regardless of when in the trial it occurred. Consequently, defendant has failed to prove that plain error affected his substantial rights, and this due process claim necessarily fails.

## II. JURY INSTRUCTION

Defendant argues that he is entitled to a new trial because the trial court should have provided M Crim JI 4.5(2), which allows a jury to consider a witness's prior sworn statement as substantive evidence, instead of merely as impeachment evidence. However, defendant is not entitled to appellate review of this issue because he has waived the issue. After the trial court instructed the jury, it asked the parties if they were satisfied with the instructions, as given. Defense counsel answered, "Yes, your Honor." Accordingly, defense counsel's expression of satisfaction with the instructions has resulted in a waiver of this issue, which extinguishes any error, *People v Carter*, 462 Mich 206, 216; 612 NW2d 144 (2000), and defendant may not now seek appellate review on this issue, *People v Vaughn*, 491 Mich 642, 663; 821 NW2d 288 (2012).[1]

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he is entitled to a new trial because his trial counsel was ineffective. We disagree.

---

[1] However, whether defense counsel's waiver constituted ineffective assistance of counsel will be addressed in Part III of this opinion.

Defendants have the guaranteed right to the effective assistance of counsel. *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Aceval*, 282 Mich App 379, 386; 764 NW2d 285 (2009). Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). Generally, to establish an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *People v Davenport*, 280 Mich App 464, 468; 760 NW2d 743 (2008). However, such performance must be measured without the benefit of hindsight. *People v LaVearn*, 448 Mich 207, 216; 528 NW2d 721 (1995). The defendant must overcome a strong presumption that counsel's actions were based on reasonable trial strategy. *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). Counsel will be found ineffective based on strategic decisions only if the strategy employed was not sound or reasonable. *Id.* But because no evidentiary hearing was held, our review is limited to mistakes apparent on the record. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

Defendant lists numerous instances where he alleges his trial counsel was ineffective, but none of these contentions has merit.

Defendant first avers that his trial counsel was ineffective for failing to obtain the victim's medical records from the hospital. Defendant asserts that the records would have shown the victim did not have injuries consistent with the blows she claimed defendant inflicted. However, defendant does not explain what injuries would have been refuted by the medical records. To the extent defendant states that the records would have shown the victim was not choked by defendant, this area was fully explored by defense counsel through the testimony of Detective Gielniak, who stated that she did not see any signs of injury on the victim's neck after the incident. Further, photos of the victim were admitted into evidence, which allowed the jury to see firsthand what injuries were visible and, more importantly, how there was no photo showing any injury to her neck. Thus, it is clear the jury was presented with information that the victim did not sustain any significant/lasting injuries to her neck area. Accordingly, assuming the medical records confirmed there was no injury to the victim's neck, this information would merely have been duplicative of what the jury had already been presented. As a result, we cannot conclude that trial counsel's failure to present this cumulative evidence qualifies as performing below an objective level of reasonableness. Moreover, it is important to note that there is nothing in the record to show what the medical records actually state. Accordingly, defendant cannot prove that if the records had been admitted they would have aided his defense. Consequently, defendant cannot show how, if the records were admitted into evidence, the outcome of the case would have been any different. This fact is fatal to defendant's claim for relief on this issue.[2]

---

[2] We further note that the assault by strangulation statute does not require an injury, let alone a lasting type of injury. See MCL 750.84(1)(b). Thus, the fact that the victim did not sustain any visible, lasting injuries is not dispositive.

Second, defendant claims that his trial counsel was ineffective for failing to ask the victim specifically whether defendant told her she could not stay at his house. Counsel's performance did not fall below an objective level of reasonableness because the victim already testified that defendant wanted her to "come back" to his home. Indeed, the victim stated a second time that defendant wanted her to "come home," meaning to return to his house in Hazel Park. Thus, there is nothing in the record to show how this area of questioning needed to be expanded upon. Moreover, assuming counsel did ask the question, as defendant suggests, there is nothing in the record to indicate that the victim would not have answered similarly to her previous answers. Accordingly, defendant cannot show how he was prejudiced by counsel's failure to ask the victim whether defendant told her she could not stay at his house, and his claim of ineffective assistance fails.

Third, defendant argues that his trial counsel was ineffective for failing to ask Detective Gielniak about the circumstances surrounding her giving some of defendant's jail property[3] to the victim. Defendant fails to explain the significance of this questioning and how such questioning would have had a reasonable probability of altering the outcome of the trial. Accordingly, defendant has abandoned this issue. See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). Nevertheless, defendant's claim fails on the merits as well. Contrary to defendant's suggestion, defense counsel did question Detective Gielniak thoroughly on why she gave the house keys to the victim after the incident. Detective Gielniak explained that because the victim had moved her belongings into defendant's house, albeit just earlier that day, that house seemed to be her residence, which made it appropriate to give her the keys to the house. Moreover, because the circumstances of the police giving any property to the victim happened hours after the crimes were committed, defendant cannot show how the failure to inquire more deeply into this area on cross-examination would have affected the outcome of the trial. In other words, this information had little to no relevance on whether defendant committed the charged acts.

Fourth, defendant argues that his trial counsel was ineffective for failing to call his neighbor, Todd Stansbury, to testify at trial. While defendant acknowledges that "[t]here were many references" to what Stansbury saw in the days after defendant was arrested, he nonetheless asserts that "it may have aided the jury" to hear from him "directly." Defendant does not explain how Stansbury's testimony would have been any different from what the jury was exposed to previously. Moreover, any prejudice defendant suffered is purely speculative and not supported by the record, as evidenced by defendant's acknowledgement that having Stansbury testify "may" have aided the jury. A defendant must do more than offer mere speculation to prove prejudice. See *Davenport*, 280 Mich App at 468 (stating that a defendant must prove that there is a reasonable probability that the outcome of the trial would have been different).

---

[3] In his brief on appeal, defendant avers that the police gave the victim his house keys and "one of his phones." But there was no evidence that the police gave the victim one of *his* phones. Instead, the only phone mentioned that the victim received was her *own* phone that the victim took from her at the beginning of her ordeal.

Fifth, defendant cursorily asserts that his trial counsel should have questioned a friend of his, Makiya Nixon, "more closely" related to the time they were together on October 27, 2015. Defendant fails to expand on this argument in any manner. At trial, Nixon testified that she was with defendant in the afternoon of October 27. Defendant picked her up from her work and took her to a doctor's appointment and then to her house. Nixon testified that she was with defendant approximately from 2:00 p.m. until 5:00 p.m. that day. But the imprisonment and assault occurred after 12:00 noon that day. Defendant leaves it to this Court to determine what other questions counsel should have asked Nixon and leaves it to this Court to determine how the absence of these questions affected the outcome of the trial. Accordingly, the issue is abandoned for the failure to adequately brief the issue. See *Payne*, 285 Mich App at 188; *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . . .").

Sixth, defendant claims that his trial counsel should have demonstrated that the baton that was admitted into evidence was "broken." Defendant, once again, fails to expand on this argument beyond his cursory statement. Accordingly, the issue is abandoned. See *Payne*, 285 Mich App at 188; *Kelly*, 231 Mich App at 640-641. We also note that the baton was introduced into evidence, so the jury was fully aware of the true state of the baton. In any event, assuming the baton was broken at the time of trial, this fact does nothing to prove that defendant did not use it on October 27, 2015, or that the victim was lying about defendant using it on her. Indeed, if the baton were broken at the time of trial, the prosecution simply could have argued that defendant broke the baton when he used it to beat the victim. Therefore, assuming the baton was broken, defendant cannot show how the presentment of this fact to the jury would have had a reasonable probability to alter the outcome of the trial, and this claim fails.

Seventh, defendant argues that trial counsel's performance was "somewhat hampered" by the government's late disclosure of the four police reports and the one recorded phone call. While the information was disclosed after trial had started, defendant fails to acknowledge that he was afforded a full opportunity to cross-examine the victim regarding these reports and phone call. Because defendant was able to cross-examine the victim and impeach her prior testimony with these materials, he has failed to show how this late disclosure affected his strategy or, more importantly, how it affected the jury's verdict. In other words, defendant offers no argument that the jury's deliberation would have been affected had the materials been provided to defense counsel in advance of trial. The jury arguably would have been presented with this same impeachment evidence on the second day of trial instead of the fourth day. There is no reason to think that the cross-examination and impeachment carried less weight because it was done at a later time. Indeed, because the victim was expressly recalled to testify, as defense counsel claimed at the time, "to fix [a] lie," the jury likely was *more* aware of any discrepancies with her prior testimony.[4] Consequently, defendant cannot prevail on this claim of ineffective assistance.[5]

---

[4] Further, during closing argument, defense counsel stressed that the victim "was brought back in part because she lied the first time she testified to you."

Eighth, defendant contends that he was denied the effective assistance of counsel because he was not able to obtain the surveillance video from the gas station, where the victim initially ran after she escaped from defendant's basement. Detective Gielniak explained that the police tried to retrieve the video from the gas station but by the time they were able to speak to a manger who had the ability to access the video, the video was lost because the gas station had implemented a new video system. Defendant does not claim that counsel could have or should have done anything differently. Moreover, defendant fails to explain how the video would have assisted his defense. Accordingly, defendant cannot prove that his trial counsel was ineffective.[6]

Finally, defendant claims that his trial counsel was ineffective when he failed to request the full jury instruction for M Crim JI 4.5. This jury instruction deals with how a jury may consider a prior statement of a witness. The trial court instructed the jury consistent with M Crim JI 4.5(1), which allows the jury to consider a witness's prior statement as *impeachment evidence* of the witness's testimony at trial. But defendant argues on appeal that his trial counsel should have requested M Crim JI 4.5(2) as well. The thrust of M Crim JI 4.5(2) is to allow jurors to consider a prior statement made under oath as *substantive evidence*.

To determine if it was erroneous for trial counsel not to request the instruction, we first look at the prior testimony to see if the instruction truly is applicable. Defendant in his brief on appeal cites to instances where the victim was impeached with her preliminary examination testimony, which does qualify as a prior sworn statement and as such would be able to be viewed as substantive evidence. However, a review of the preliminary examination testimony shows that it was reasonable for defense counsel to have only wanted the prior testimony to be used as impeachment evidence and not as substantive evidence.

Defendant first relies on the instance where the victim testified about how much time passed from when defendant started looking at her phone to when he punched her in the eye. At trial, the victim stated that it happened very quickly after defendant started looking at her phone—"about five seconds" afterward. However, defense counsel showed the victim her preliminary examination testimony, where she stated that she was first struck "20 to 30 minutes" after defendant began to look through her phone. It is clear that no reasonable defense attorney would have wanted the preliminary examination testimony to be used as substantive evidence because to do so would mean that counsel intended to introduce the victim's prior testimony to prove that defendant actually struck the victim 20 to 30 minutes after tying her up and looking through her phone, which does nothing to absolve defendant.

---

[5] To the extent that defendant's claim could be interpreted as a due process challenge because of the loss of evidence attributable to the government, a defendant must prove that the government acted in bad faith. *Arizona v Youngblood*, 488 US 51, 57-58; 109 S Ct 333; 102 L Ed 2d 281 (1988). Here, there is no sign that the government acted with bad faith, and defendant does not claim that the government acted with bad faith.

[6] Again, there is no evidence that the police acted with bad faith. Thus, any due process challenge fails as well.

Defendant also cites to another instance of his trial counsel confronting the victim with her preliminary examination testimony. This other instance involved the victim's recollection of what types of materials defendant used to tie her hands together. At trial, the victim explained that after defendant cut off the zip-tie cuffs, he used Audio/Video (A/V) cords and tape to secure her hands together. But at the preliminary examination, the victim testified that "tape and rope" were used. Again, no reasonable defense counsel would have wanted the preliminary examination testimony to be used as substantive evidence because to do so would mean that counsel intended to introduce the victim's prior testimony to prove that defendant actually tied the victim up with tape and rope (instead of tape and A/V cords), which does not assist defendant in defending against the charges.

Therefore, because of the content of the cited preliminary examination testimony, it is beyond dispute that defense counsel only wanted to use the prior testimony to show that the victim was lying (at trial *and* at the preliminary examination) and that defendant did not commit the alleged acts. It is incongruous for defendant to implicitly suggest on appeal that if the evidence was considered substantively it could somehow have aided his defense. Accordingly, defense counsel's decision to not request M Crim JI 4.5(2), or its equivalent, was inherently reasonable and defendant cannot sustain a claim of ineffective assistance for this conduct.

Affirmed.


/s/ Cynthia Diane Stephens
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly

-7-